**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:06cv355**

| | | |
|---|---|---|
| **ALBERT F. BISHOP, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **GREEN TREE SERVICING LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

     **THIS MATTER** is before the court upon defendant's Motion to Dismiss and

Motion to Compel Arbitration. Having carefully considered defendant's Motions,

the plaintiff's response and reviewed the pleadings, the court enters the following

findings, conclusions, and Recommendation.

**FINDINGS AND CONCLUSIONS**

**I.      Background**

     This action concerns the repossession of a mobile home in Buncombe County,

North Carolina. In affecting the repossession of the home, plaintiff contends that

defendant committed state law torts, including civil trespass, unfair and deceptive

trade practices affecting commerce, unfair and deceptive trade practices in the

collection of a debt, damage to property, fraud, intentional infliction of emotional

distress, and a "cause of action" for punitive damages.

     While the facts alleged by the plaintiff in the Complaint have been considered

as true for the purpose of the pending motions, the court has fleshed out such allegations through review of other materials of record, including the "Manufactured Home Retail Installment Contract," which is implicated by the Complaint and attached to the Motion to Dismiss.

On or about October 23, 1995, plaintiff and his now estranged spouse entered into an agreement to purchase a manufactured home from Southern Showcase Housing, Inc. In conjunction with this purchase, the plaintiff and his spouse executed the above referenced installment contract that provides that plaintiff and his spouse are the buyers of the home, that Southern Showcase is the seller of the home, and that defendant Green Tree Financial Servicing Corporation is the assignee. The installment contract contained several provisions, including one governing default:

> 10. DEFAULT: I will be in default if: (i) I do not make a payment on time; or (ii) I do not keep any of my other promises under this Contract . . . [Green Tree] will give me notice of the default except when I voluntarily surrender or abandon the Manufactured Home. I will have the right to cure the default during the notice period. If I do not cure the default, [Green Tree] may do either or both of the following: (a) Acceleration: [Green Tree] can require me to immediately pay [Green Tree] the entire remaining balance of this Contract; and/or (b) Repossession: [Green Tree] can repossess the Manufactured Home. Once [Green Tree] get[s] possession of the Manufactured Home [Green Tree] may sell it.

Docket Entry 6, Ex. A, at ¶ 10 (emphasis deleted).

Plaintiff alleges in his complaint that he "fell behind on payments to [Green Tree] which were due under the Note." Compl., at ¶ 10. He further alleges that he moved out of the home and attempted to lease the home as a rental, but that his tenants subsequently vacated the home. Id., at ¶¶ 11-12. Plaintiff further admits that

he "was unable to make payments under the Note in a timely fashion." Id. ¶ 12.

The Installment Contract expressly provides that any dispute relating to the contract or the parties to the contract must be arbitrated pursuant to the Federal Arbitration Act ("the FAA"). Docket Entry 6, Ex. A, at ¶ 14. The Installment Contract provides, as follows:

> ARBITRATION: All disputes, claims or controversies arising from or relating to this Contract or the parties thereto shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, Assignee retains an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision.

Id., at ¶ 14 (emphasis in the original).

Finally, the installment agreement contains a provision immediately preceding plaintiff's signature line:"NOTICE TO BUYER" that provides, in part, "DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT."   Id., at 3 (emphasis in original). Plaintiff signed the agreement on the same page as part of the arbitration provision and he initialed every page.

Plaintiff alleges that after he ceased making payments under the agreement, defendant made harassing telephone calls to plaintiff and his family members. Compl., at  ¶¶ 12-13. In addition, plaintiff claims that Green Tree withdrew an unauthorized amount of money from plaintiffs' parents' bank account. Compl., at  ¶ 14. Plaintiff also alleges that Green Tree instituted a foreclosure action on the mobile home, changed the locks, put up a for sale sign, and showed the home to prospective buyers, all of which plaintiff witnessed. Compl., at  ¶¶ 15-19.

## II.    Motion to Compel Arbitration

The installment agreement contains an arbitration provision, which clearly requires that the disputes between these parties be arbitrated. Federal courts do not hesitate to enforce a bargained-for arbitration agreement.  Moses H. Cone Memorial Hosp. V. Mercury Construction Corp., 460 U.S. 1 (1983).  Prompt court enforcement of arbitration agreements is the linchpin of Title 9, United States Code, Section 2.

Section 2 of Title 9 governs the effect of a "contractually agreed-upon arbitration provision," but state law prevails on general principles concerning contract formation.  Supak & Sons Mfg. Co., Inc. v. Pervel Indus. Inc., 593 F.2d 135 (4th Cir.

1979).  In the 20 years since Supak, both the United States Supreme Court and the Court of Appeals for the Fourth Circuit have indicated a strong preference for arbitration:

> Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: "[A] party cannot be required to submit to arbitration any dispute which it has not agreed so to submit."  Nevertheless, the Supreme Court has announced its "Healthy regard for the federal policy favoring arbitration" and has explained that the Federal Arbitration Act . . . "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960), and Moses H. Cone Memorial Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25 (1983)).  Interpretation of the contract is governed by state law, and federal law requires that ambiguities or doubts in a contract be construed in favor of arbitration.  McKee v. Home Buyers Warranty Corp. II, 45 F.3d 981, 984 (5th Cir. 1995).

Plaintiff argues in response to defendant's motion that this transaction and his claims do not involve interstate commerce and that the Federal Arbitration Act does not apply.  Plaintiff is, however, estopped from making such an argument by his own promise that "[t]his agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. 1."  Docket Entry 6, at ¶ 14.  Plaintiff also argues that the torts that he has alleged are unrelated to the transaction and that he should not be compelled to resolve them

through binding arbitration. Again, plaintiff's agreement forecloses this argument inasmuch as he indisputably agreed that "[a]ll disputes, claims or controversies arising from or relating to this Contract or the parties thereto shall be resolved by binding arbitration . . . ." Id. Further, the agreement provides that the "parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration . . . ." Id.

The contract at issue here contains no ambiguities and leaves no doubt but that plaintiff agreed to binding arbitration as his forum for resolving any claims that he has purported to assert. Further, plaintiff has not attacked the contract itself or shown that it was entered into improperly or that defendant secured such contract through unconscionable means including fraudulent inducement. Section 3 of the Federal Arbitration Act provides, as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant of the stay is not in default with such arbitration.

9 U.S.C. § 3. The undersigned will, therefore, recommend that arbitration be compelled as to the purported asserted claims and that inasmuch as the agreed to arbitration is binding, the undersigned recommends that the purported claims in this action be dismissed without prejudice and this action closed.

## III. Alternative Recommendation and Applicable Standard for Decision in a Motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

Should the District Court determine that the court should also review and decide the motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by the defendant, the undersigned recommends the following disposition of that motion.

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the Complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

The undersigned has considered the "Manufactured Home Retail Installment Contract" which was attached to the motion of the defendant in making this recommendation. The undersigned has done so without converting the motion to dismiss to one for summary judgment. The undersigned has considered such document inasmuch as it was referenced in the Complaint, is central to the plaintiffs' claims, and its authenticity has not been disputed. Clark v BASF Salaried Employees' Pension Plan, 329 F.Supp.2d 694, 697 (W.D.N.C.2004) (citing Henson v CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994), holding that the "district court may also take judicial notice of matters of public record without converting a 12(b)(6)

motion into a motion for summary judgment"), <u>affirmed as modified by Clark v</u> <u>BASF Corp.</u>, 142 Fed. App'x 659, 661 (4th Cir.2005)[1] (also recognizing that district court properly considered pension plan document, which was not part of the public record, without converting the motion to dismiss into a motion for summary judgment, where there was no dispute as to document's authenticity, the document was referenced in the complaint and the document was central to the plaintiff's claim).  <u>See also</u> <u>Basnight v HRSA-ILA Management</u>, 2006 WL 2850650, *6(E.D.Va. 2006).[2]

In his brief, the plaintiff states that he "does not dispute the installment agreement, the security agreement, the balance due on the agreement, the status of the account, or any other contractual matter with the defendant".   (Defendant's brief p. 8)   As a result, the exhibit meets all the criteria for consideration without converting the 12(b)(6) motion into a motion for summary judgment.  For the limited purpose of ruling on defendant's motions, the court has accepted as true the facts alleged by plaintiff in the complaint and will view them in a light most favorable to plaintiff.

## IV.   Discussion

### A.   Motion to Dismiss

Plaintiff has attempted to assert seven claims under North Carolina law against

---

[1]         Due to the limits of electronic case filing, a copy of such unpublished opinion of the Court of Appeals for the Fourth Circuit is incorporated herein by reference to the Federal Appendix citation.

[2]         Due to the limits of electronic case filing, a copy of such unpublished opinion is incorporated herein by reference to the Westlaw citation.

defendant. Defendant has moved to dismiss five of these claims under Rule 12(b)(6), and seeks to compel arbitration as to any claims that remain. Defendant seeks dismissal of plaintiff's claims for trespass, unfair trade practices, a claim entitled "damage to property," fraud, and intentional infliction of emotional distress.

### 1. Civil Trespass

Defendant contends that plaintiff has failed to state a cause of action for "civil trespass" under North Carolina law. The court considers the pleadings of the plaintiff as a cause of action for trespass to real property and trespass to personal property. The essential elements of a claim for trespass to real property are: (1) that the plaintiff was in possession of real property at the time of trespass; (2) that defendant, without authorization, unlawfully entered such real property; and (3) that plaintiff sustained damage as a result of the unlawful entry. Broughton v. McClatchy Newspapers, Inc., 161 N.C.App. 20, 32 (2003). The essential elements of trespass to personal property are: (1) that at the time of the alleged trespass, the plaintiff had actual possession of the personal property; and (2) that without justification, authority or lawful excuse, the defendant interfered with the plaintiff's possession of the personal property. N.C. P.I.—Civil 805.10 and McDowell v Davis, 33 N.C. App. 529 (1977) overruled on other grounds by Johnson v Ruark Obstetrics and Gynecology Associates, P.A., 327 N.C. 283 (1990). Under Migdal, supra, the question posed by defendant's motion is whether the facts alleged in the Complaint, or those facts of which the court can properly take notice, can support the legal conclusion of a trespass. The answer is no.

In our society, commerce is governed by laws and contract. Few people have the economic wherewithal to pay cash for goods, especially when those goods take the form of homes. To facilitate the purchase of durable goods, consumers and manufacturers enter into standard financing agreements, which may in turn be sold to banks and finance companies. In securing such credit, consumers routinely agree to surrender certain privileges in the event of default. In this case, plaintiff agreed to the following:

> If I do not cure the default, [Green Tree] may do either or both of the following: (a) Acceleration: [Green Tree] can require me to immediately pay [Green Tree] the entire remaining balance of this Contract; and/or (b) Repossession: [Green Tree] can repossess the Manufactured Home. Once [Green Tree] get[s] possession of the Manufactured Home [Green Tree] may sell it.

Docket Entry 6, at ¶ 10.

North Carolina law has long held that a creditor may peaceably repossess personal property. In Freeman v. Gen. Motors Acceptance Corp., 205 N.C. 257 (1933), the North Carolina Supreme Court held that "the defendant had the right, under its contract, peaceably to repossess the automobile is not questioned." The contract in this case provides that the home will always be personal property, inasmuch as plaintiff promised that "I will . . . not attach the Manufactured Home to any real estate and the Manufactured Home will always be treated as personal property . . . ." Docket Entry 6, at ¶ 8. Further, plaintiff promised that "[i]f I default, you can do whatever is necessary to correct my default." Id., at ¶ 10.

In addition to the contract, a statute provides the defendant with the right of access to the plaintiff's real property and personal property. N.C.G.S. 25-9-609(a)

provides as follows:

> (a) Possession; rendering equipment unusable; disposition on debtor's premises. ----After default, a secured party:
> (1) May take possession of the collateral; and
> (2) Without removal, may render equipment unusable and dispose of collateral on a debtor's premises under G.S. 25-9-610.

Considering the allegations of the Complaint in light of the installment agreement and the statute, plaintiff cannot allege or later prove facts that would support a finding in his favor on the second element of a claim for "Civil Trespass", which is entry "without authorization." <u>Broughton</u>, <u>supra</u>. The plaintiff authorized both the entry to the real property and the entry and possession of the personal property in the contract. The undersigned will, therefore, respectfully recommend that plaintiff's claim for "Civil Trespass" be dismissed with prejudice as a claim cannot be stated as provided by Rule 12(b)(6).

## 2.     Unfair and Deceptive Trade Practices Claim

A state-law claim for Unfair and Deceptive Trade Practices is governed by Chapter 75-1.1(a) of the North Carolina General Statutes, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Id. When such provision was enacted into law in 1969, it contained the following statement of purpose:

> The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

N.C. Gen. Stat. 75-1.1(b). *See also* <u>Edmisten v. Penney Co.</u>, 292 N.C. 311 (1977) In response to a decision of the North Carolina Supreme Court in <u>Edmisten</u>, Section 75-1.1(b) was amended in 1977 to read "[f]or the purposes of this section "commerce" includes all business activities, however denominated . . . ." Id.

The UDTPA is, without doubt, a scheme regulating conduct between buyers and sellers and between businesses. *See* <u>Roberson v. Dale</u>, 464 F.Supp. 680 (M.D.N.C. 1979). *See also* <u>Liggett Group, Inc. v. Sunas</u>, 113 N.C. App. 19, 31 (1993); <u>Buie v. Daniel Int'l</u>, 56 N.C. App. 445, 448, cert. denied, 305 N.C. 759 (1982). To state a cause of action under the UDTPA, plaintiffs must allege the following:

(1)     conduct constituting an "unfair or deceptive act or practice;"

(2)     conduct "in or affecting commerce," and

(3)     that such conduct proximately caused actual injury to plaintiff.

<u>Food Lion, Inc. v. Capital Cities/ABC Inc.</u>, 951 F. Supp. 1224, 1230 (M.D.N.C. 1996).

Normally, the court would review the Complaint as to each element to determine whether a claim has in fact been stated; however, for alleged unfair and deceptive acts that occur in the context of debt collection, the North Carolina Debt Collection Act provides the exclusive remedy, replacing any otherwise applicable UDTP claims. The NCDCA provides:

> The specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this article.

N.C. Gen. Stat. § 75-56. Plaintiff has, in this third cause of action, asserted what can

be deemed to be a NCDCA claim.  Inasmuch as "a debt collector who violates a provision of Article 2 [the NCDCA] and thereby violates G.S. § 75-1.1, is only subject to the damages and penalty provided for in Article 2, § 75-56 and is not subject to the damages provisions in Article 1 [of Chapter 75]," <u>Friday v. United Dominion Realty Trust, Inc.</u>, 155 N.C. App. 671, 678 (2003), and because the alleged misconduct did not exceed actions encompassed by the NCDCA, <u>Johnson v. MBNA Am. Bank, N.A.</u>, 2006 WL 618077, at *8 (M.D.N.C. 2006),[3] the undersigned will recommend that plaintiff's claim for unfair and deceptive trade practices under Article I  be dismissed for failure to state a claim as a matter of well settled North Carolina law. <u>Id.</u>

### 3.    Damage to Property

The plaintiff has, in his complaint, presented a purported cause of action entitled "Fourth Cause of Action: Damage to Property".  The defendant, in his brief, contends that "damage to property is not a recognized cause of action under North Carolina law".  (Defendant's brief p. 4) The defendant has not cited any authority in support of this contention.  The plaintiff, in his responsive brief, has not addressed the defendant's argument as to this purported cause of action.  A reading of the plaintiff's pleading shows that the plaintiff may be attempting to state a cause of action for trespass to real property and trespass to personal property which this court has already addressed.  There does not appear to be a cause of action under North Carolina law for "damage to property" as such a cause of action is to be presented

---

[3]    Due to the limits of electronic case management, a copy of such unpublished decision is incorporated into the docket and published to the parties by reference to the Westlaw citation.

aseither a trespass to real property or a trespass to personal property, or both. The undersigned will recommend dismissal of this claim.

### 4. Fraud

The essential elements of a claim of fraud by misrepresentation are: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. <u>Jolly v. Acad. Collection Serv.</u>, 400 F.Supp.2d 851 (M.D.N.C. 2005). To satisfy the specificity requirements of Rule 9(b), it is plaintiff's obligation to plead the time, place, and contents of the false representations, as well as the identity of the person making the representation and what such person obtained thereby. If such particularity is lacking, dismissal is proper. <u>Gant v. NCNB Nat'l Bank of N.C.</u>, 94 N.C. App. 198, 201 (1989). A complaint has a "fatal deficiency" if it "contains no facts whatsoever setting forth the time, place or specific individuals who purportedly made the fraudulent misrepresentations to plaintiff." <u>Id.</u>

According to the allegations of the Complaint, the only allegedly fraudulent representations are that defendant could enter, market, and sell plaintiff's manufactured home, and that plaintiff could not rent the home after his default. Compl., at ¶ 50. In support of these allegations, plaintiff only provides a general time frame for the conduct that purportedly underlies his fraud claim: "various occasions during the spring and summer of 2006." <u>Id.</u> Furthermore, plaintiff does not identify any Green Tree agent in any way. *See* Compl., at ¶¶ 13, 19 Thus, plaintiff's claim of fraud fails to meet North Carolina's requirement of particularity and is subject to dismissal as a matter of law.

The undersigned has, however, also considered whether such deficiency could be cured through amendment. Amendment would, however, run afoul of Rule 11 inasmuch as the installment contract expressly provides that defendant has the right to repossess the manufactured home if plaintiff fails to make timely payments. Further, plaintiff admits in Complaint that he ceased making payments on the manufactured home, and consequently defendant was within its rights, as provided by the agreement, to repossess the property and pursue foreclosure. The contract also precludes the plaintiff from leasing the home. Thus, plaintiff cannot, in good faith, allege that the representations made by defendant were false, as is required to state a claim for fraud. The undersigned will, therefore, respectfully recommend that plaintiff's claim for fraud by misrepresentation be dismissed because a claim simply cannot be stated.

### 5. Intentional Infliction of Emotional Distress

Defendant has also moved to dismiss plaintiff's claim of intentional infliction of emotional distress. The elements of that tort are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." Hogan v. Forsyth Country Club, 79 N.C. App. 483, 488, disc. rev. denied, 317 N.C. 334 (1986). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery." Id., at 490.

For purposes of ruling on defendant's motion, the court has taken all the allegations of the Complaint as true. Even if the court were to consider all allegations as true, they do not "exceed all bounds of decency," West v. King's Dep't Store, Inc.,

365 S.E.2d 621, 625 (N.C. 1988), and cannot be "'regarded as atrocious, and utterly intolerable in a civilized community.'" Wagoner v. Elkin City School Bd. of Educ., 440 S.E.2d 119, 123 (N.C. Ct. App. 1994) (citation omitted).

The initial inquiry made by North Carolina courts is whether the alleged conduct is "extreme and outrageous." This is a question of law for the court. Johnson v. Bollinger, 86 N.C. App. 1, 6 (1987). In that analysis, under North Carolina law:

> Liability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . [P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

Briggs v. Rosenthal, 73 N.C. App. 672, 327 S.E.2d 308 (1985) (*quoting* The Restatement of Torts). Where a plaintiff's complaint fails to allege facts sufficient to set forth extreme and outrageous conduct, the IIED claim is subject to dismissal pursuant to Rule 12(b)(6). Johnson, supra, at 6.

In Hogan, wherein a defendant threatened plaintiff with bodily injury and advanced on her with a knife after she refused his sexual advances, the appellate court found that plaintiff had stated a cause of action and that defendant's conduct was "beyond the `bounds usually tolerated by decent society.'" Hogan v. Forsyth Country Club Co., supra, at 491. While the conduct alleged herein could be construed as inappropriate - - even for debt collectors - - the allegations of misconduct do not cross the line drawn by Hogan.

Taking all of plaintiff's allegations as true, defendant's attempts to collect the debt owed by plaintiff and its repossession of the manufactured home simply do not "exceed[] all bounds usually tolerated by decent society." <u>Stanback v. Stanback</u>,297 N.C. App. 181, 196 (1979). The most troublesome conduct alleged are the actions of the defendants towards plaintiff's parents, including the overdraft of the parents' checking account; however, the tort of intentional infliction of emotional distress is not derivative, plaintiff's parents are not parties to this action, and plaintiff cannot properly allege or recover for any misconduct suffered by his parents or their emotional distress. <u>Briggs</u>, <u>supra</u>, at 678. Because "this is an intentional tort the actor must act with reckless disregard or the intent to cause severe emotional distress to the victim." <u>Id.</u>

While the court has considered all of plaintiff's allegations, the bulk of the alleged misconduct is described in paragraph 40(e) of the Complaint. Complaint, at ¶ 40. Many of those allegations cannot form the basis of any tort claim, much less a claim for intentional infliction of emotional distress, inasmuch as defendant had the contractual right to enter plaintiff's land to repossess the home, exclude plaintiff, and resell the collateral. Indeed, it was plaintiff himself that granted defendant the right to "do whatever is necessary to correct my default." <u>Id.</u>, at ¶ 10. While there is little doubt that it would be embarrassing to have potential buyers come on one's property to view the home, such act is not even arguably extreme and outrageous inasmuch as defendant's attempt to sell the home without first moving it inured to the benefit of plaintiff inasmuch as the additional costs of a move would not be tacked on to any

deficiency. As to allegations of harassing phone calls by debt collectors, such a claim is sufficiently covered by plaintiff's NCDCA claim. While such conduct is unpleasant and may cross into the realm of distasteful, it does not come close to level required in North Carolina to allege a cause of action for intentional infliction of emotional distress.

The undersigned will, therefore, respectfully recommend that plaintiff's IIED claim be dismissed with prejudice under Rule 12(b)(6).

### 6. Punitive Damages Claim

While defendant has not moved to dismiss plaintiff's claim for punitive damages, the undersigned must recommend dismissal of such "cause of action" as a matter of law inasmuch as North Carolina does not recognize a "cause of action" for punitive damages. Instead, punitive damages may be sought in an *ad damnum* clause or a prayer for relief for damages for some other tort that would support punitive damages.

As a matter of state law, "punitive damages" is not a cause of action, but is instead a remedy available in very limited circumstances.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, Damages and Recovery § 195 at 389 (1972). North Carolina follows this general rule of law.

Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991). In North Carolina,

> punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is

guilty of fraud, malice, or willful or wonton conduct.

Combs & Associates, Inc. v. Kennedy, 147 N.C.App. 362, 374 (2001) (citation omitted). Further, it appears that

> Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, and managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

Phillips v. Restaurant Management of Carolina, L.P., 146 N.C.App. 203, 215- 16 (2001) (citation omitted). In North Carolina, the aggravating factors that will justify imposition of punitive damages are set forth by statute: "(1) fraud, (2) malice, or (3) willful or wanton conduct." N.C. Gen.Stat. § 1D-15(a). Finding that plaintiffs cannot assert punitive damages as an independent cause of action, the undersigned will recommend that such claim be dismissed as non-justiciable.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's

(1)     Motion to Compel Arbitration (#6) be **GRANTED**, and that arbitration be **COMPELLED** as to the plaintiff's claims; and

(2)     That in the alternative, the Motion to Dismiss (#6) be **GRANTED** as to plaintiff's claims for civil trespass, unfair and deceptive trade practices affecting commerce, damage to property, fraud, intentional infliction of emotional distress, and the "cause of action" for punitive damages, and

that such claims be dismissed in accordance with Rule 12(b)(6) **WITH PREJUDICE** for failure to state a claim.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same.  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: February 11, 2007

Dennis L. Howell
United States Magistrate Judge